## THE STATE v. MEYER KOSLOWESKY, alias MEYER KOSLOVSKY, Appellant.

### Division Two, May 26, 1910.

1. **PERJURY: False Bond: Necessary Allegation and Proof: Particular Case.** In an indictment charging defendant with perjury in qualifying himself to become a surety on a bond in a criminal cause, it is essential to both accurately particularize and substantially prove the judicial proceeding in which the false statement or qualification was made.

2. ——: ——: ——: ——: **No Proof: General Statement.** The defendant was surety on an appearance bond in the case

State v. Koslowesky.

of State v. Boyd, and the indictment so charges, and further charges him with false swearing and perjury in that case by making a false oath qualifying himself as a surety. The evidence disclosed that the case of State v. Boyd was pending in the court on the day the bond was given; that defendant had frequently signed in said court bonds for other persons charged with crimes; that it was a common practice of the court to require persons who frequently signed bonds, to be examined upon their oath as to their solvency and property qualifications; that their sworn statements were reduced to writing and after being properly subscribed were preserved as a file; that the sworn statement made by defendant did not bear the name or style of any particular case and was not in fact made in connection with any particular case, but was made by him and taken by the court, by its clerk, for use in all cases in which he presented himself as surety, this method being adopted in lieu of separate qualifications in each particular case, and defendant knew that; that in the first case on the day in which defendant made the bond in question, the clerk took his sworn statement, but it did not name the case of State v. Boyd, or any defendant, or any particular case; that on that day he executed as surety at least six bonds and the only evidence that he executed the bond was the bond itself; and that the statements made were false. *Held*, that a demurrer to the evidence should have been sustained, it being necessary to show that the sworn false statement was made in a particular case, and that was not shown.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED.

*Thos. B. Harvey* for appellant.

(1)   Appellant's demurrer to the evidence should have been sustained. There was a total failure of evidence to support the allegation of the indictment that the alleged false oath was taken in the case of the State v. Joseph Boyd. 30 Cyc. 1441; 2 Bishop's New Cr. Pr. (4 Ed.), secs. 910, 911; 2 Wharton Cr. Law (10 Ed.), sec. 1293; People v. Strassman, 112 Cal. 683; Walker v. State, 96 Ala. 53; State v. Green, 100 N. C. 547; Wilson v. State, 115 Ga. 206; State v. Keel, 54 Mo. 182; State v. Huckaby, 87 Mo. 414. (2) The court erred

in refusing appellant's instruction requiring the false oath to have been taken in the judicial proceeding alleged in the indictment; and erred in so modifying said instruction as to authorize a conviction if the defendant "presented" the alleged false bond-qualification to the judge of the court. See authorities above.

*Elliott W. Major,* Attorney-General, and *Chas. G. Revelle,* Assistant Attorney-General, for the State.

(1) False swearing in a matter before an officer, touching the sufficiency of bail offered for a person charged with a criminal offense, is perjury at common law and under the statutes. Commonwealth v. Miller, 6 Pa. Super. Ct. 35; Stratton v. People, 20 Hun (N. Y.) 288; Commonwealth v. Hatfield, 107 Mass. 227; State v. Wilson, 87 Tenn. 693; People v. Froelich, 110 App. Div. (N. Y.) 873; Pollard v. People, 69 Ill. 148. (2) It is strenuously urged that there was a total failure of proof to support the allegation that defendant's false statements were made in the case of State v. Joseph Boyd. In support of this contention, appellant cites a number of authorities in other jurisdictions, dealing with the question of variance, but an examination of such authorities readily discloses that they throw but little light upon the question here involved, and are not authorities in support of appellant's assignment. The cases cited deal with variance in names and descriptions, and to whatever extent they are in point, which seems slight, they are in conflict with our statutes and decisions upon the question of variance in names and descriptions. For the purpose of showing the inapplicability of such authorities to the case at hand, and the immateriality of the variances there considered, when measured by the laws of this State, we cite the following: R. S. 1899, sec. 2534; State v. Jackson, 221 Mo. 506; State v. Sharpless, 212 Mo. 201;

State v. Barker, 64 Mo. 285; State v. Sharp, 71 Mo. 221; State v. Harl, 137 Mo. 256. These statements having been made by the defendant for the very purpose to which they were applied in the Boyd case, and having been used by the court for that purpose, with defendant's knowledge and at his instance, he cannot be heard to complain that the court did not do twice that which it was required to and did do but once. Commonwealth v. Miller, 6 Pa. Super. Ct. 41; Moore v. Commonwealth, 6 W. & S. 314; Commonwealth v. Ross, 6 S. & R. 427; Commonwealth v. Hatfield, 107 Mass. 231.

FOX, J.—This is an appeal on the part of the defendant from a judgment of the circuit court of the city of St. Louis, convicting the defendant of perjury.

On the 29th day of May, 1908, the grand jury of the city of St. Louis returned into open court an indictment charging the defendant with the crime of perjury. This indictment charges perjury committed in a judicial proceeding before the St. Louis Court of Criminal Corrections, in the case of the State of Missouri v. Joseph Boyd, said cause being for alleged "crap shooting," and the false swearing or prejury is predicated by appropriate allegations in such indictment upon an alleged false oath made by the appellant in qualifying himself to become surety upon the bail bond of said Joseph Boyd in the sum of two hundred dollars.

The testimony developed upon the trial tended to prove that on December 24, 1907, there was pending in the St. Louis Court of Criminal Correction a certain criminal action in which one Joseph Boyd was charged with playing a game of chance for money, with dice, and that defendant appeared before the judge of that court and offered himself as surety on Boyd's appearance bond. The testimony also discloses that the defendant had frequently signed in that court bonds

for other persons who were charged with violations of the law, and that it was a common practice in that court to require persons who frequently signed bonds, to be examined upon their oath as to their solvency and property qualifications, whenever in the opinion of the court it was necessary. Their sworn statements were reduced to writing and after being properly subscribed to were preserved as a file of the court to be used by it whenever the persons so qualifying presented themselves as bondsmen. The bondsman's sworn statement or qualification, as it is referred to in the record, did not bear the name or style of any particular case and was not, in fact, made in connection with any particular case, but was given by the bondsman and taken by the court for use in all cases in which the person qualifying presented himself as surety; this method being adopted in lieu of a separate qualification in each particular case. The testimony tends to disclose that the practice of taking these sworn statements and the purposes for which such sworn statements were taken and the use to which they were to be applied, were known to the defendant. The record discloses that these regular sureties were not required to make a qualification in each case when they signed bonds, but were required to make a qualification only at intervals; but about the time the qualification in this proceeding was executed the judge of the Court of Criminal Correction had notified the deputy clerk, Mr. Moone, who attended to such matters, to take a qualification of appellant the next time he presented himself as surety.

On the 24th of December, 1907, in the first case in which appellant became surety, the deputy clerk, Mr. Moone, prepared and took his qualification in the form of an affidavit or statement. This qualification or statement does not purport to have been taken in any case, but is left blank, both as to the name of the defendant and the charge against him, and the statement or af-

fidavit or qualification, whatever it may be termed, does not indicate in what case or for what principal the surety was qualifying himself. The deputy clerk, Mr. Moone, testified that this and other qualifications of regular sureties were not deposited with the files in any case, but that such qualifications were kept in a certain pigeon hole where they could be resorted to by the court for information in regard to the surety, if desired. This witness, Mr. Moone, also testified that he had no recollection in what case the appellant first presented himself as surety on the aforesaid date, that is, on December 24, 1907, nor could he from recollection or otherwise connect the taking of such qualification with the Joseph Boyd case, or with any other case. It is also disclosed by the testimony in the record and was stated by the deputy clerk, that the appellant in this cause on the same date executed six other bonds, which he, the witness, was able to find, and that he may have executed a number of other bonds on that same date; that without a long and tedious search through all the files and a great many cases, it would be impossible for him to say how many bonds had been executed by the defendant on that date. It also appears that no record was made of the fact of a bond being given, the bond itself filed with the papers in the case being the only evidence of the execution of the bond. Mr. Moone, upon cross-examination, testified concerning the qualification of the appellant upon the bond taken, as follows:

"Q. When you say that qualification was before the court, you don't have any distinct recollection of the court examining any qualification at that time when the Boyd bond was given, do you? A. Not when that particular bond was given.

"Q. But you say that the qualification given on that day was on file in court? A. Yes, sir.

"Q. But in connection with what case, and in connection with what bond, the oath was administered

to the defendant as to his qualifications, you don't know? A. No, sir."

And the following questions were propounded by the court and answered by the witness:

"Q. Had he been in the habit of signing bonds there? A. Yes, sir.

"Q. Is it the custom to take a qualification and use it in more than one case? A. Yes, sir.

"Q. Was he aware of that custom? A. Yes, sir."

In the statement or qualification as it is termed, taken by the deputy clerk, defendant made the following statements: Said that he was the absolute owner of the premises described in the indictment; that he did not live on said premises; that there was no incumbrance, mortgage or deed of trust upon said property; that there was no judgment for any sum against him; that no person, other than himself, had any interest whatever in the property mentioned, and that in acquiring same he paid therefor the sum of $15,000. These statements were not made in connection with any particular case, but, as was the practice, were reduced to writing, to be used in subsequent cases.

There was other testimony tending to show that at the time defendant made the sworn statements referred to, the real estate involved was encumbered by deed of trust to the extent of $8500; that there was at that time an unsatisfied judgment against him for $800, rendered in the circuit court of St. Louis; that he had paid for said property the sum of $12,500; that his wife was one of the grantees in the deed conveying the property and was equally interested in same; and that he and his family resided on said premises.

The defendant offered no evidence in his own behalf.

At the close of the evidence counsel for appellant offered a general demurrer to the evidence, which the court overruled, and an exception to the action of the court was duly preserved. There was also offered by

the appellant a special demurrer, on the ground that the evidence failed to show that the alleged false oath was taken in and with reference to the case of State v. Joseph Boyd. Also because the evidence failed to show that the note secured by the deed of trust had not been paid prior to December 24, 1907, the date of the alleged qualification. This special demurrer was also overruled, to which action of the court defendant duly preserved his exceptions.

The court then instructed the jury upon such phases of the case as in its judgment the testimony was applicable to. The cause being submitted to the jury, they returned a verdict finding the defendant guilty, assessing his punishment at five years in the penitentiary, which was subsequently reduced by the court to three years. Timely motions for new trial and in arrest of judgment were filed and by the court taken up and overruled. Sentence and judgment were entered in accordance with the assessment of the punishment by the court, and from this judgment the defendant prosecuted this appeal and the record is now before us for consideration.

## OPINION.

The leading and controlling proposition with which we are confronted, as disclosed by the record in this cause, is the challenge upon the part of the appellant to the propriety and correctness of the action of the court in refusing to sustain a demurrer to the evidence at the close of the State's case.

We have indicated substantially the testimony introduced at the trial, and after a most careful consideration of it, we see no escape from the conclusion that it was the duty of the court at the close of the State's case to have sustained the demurrer as interposed by the appellant.

The indictment in this cause charged perjury, and that the false oath made or taken was in a certain judicial proceeding, that is, the case of the State of Missouri v. Joseph Boyd. Clearly, it was essential in that case, if the perjury was committed in that judicial proceeding, to so allege in the indictment, and in conformity to the law it was there charged and alleged in the indictment that the perjury was committed in the judicial proceeding referred to of State v. Boyd. That was an essential allegation, and in the trial of the cause it was equally essential to establish by proof that the false oath was taken in the judicial proceeding as laid in the indictment. In Wilson v. State, 115 Ga. 206, it was expressly ruled that "in a prosecution for perjury it is essential to correctly describe and accurately prove the judicial proceeding in which the perjury is alleged to have been committed. It must be accurately described in the indictment, and must be proved substantially as laid."

Our statute defining perjury, section 2033, Revised Statutes 1899, first subdivision, fully recognizes that it is essential in order to constitute the offense that the false oath or testimony must be in some matter or proceeding before some court, tribunal or public body or officer. It provides that "every person who shall willfully and corruptly swear, testify or affirm falsely to any material matter, upon any oath or affirmation, or declaration, legally administered, in any cause, matter or proceeding, before any court, tribunal or public body or officer," etc., shall be deemed guilty of perjury. This statute emphasizes the correctness of the conclusion that it was essential in this cause to allege that the perjury was committed in the judicial proceeding of State v. Boyd. In State v. Huckeby, 87 Mo. 414, this court held the indictment sufficient; referred to the statute defining perjury, and particularly emphasized the conclusions reached that the indictment was sufficient in that it fully complied with the pro-

visions of the statute, named and particularized the cause in which the alleged perjury was committed.

In Cyc. Law and Procedure, vol. 30, p. 1441, in the text, the rule is thus stated: "Strictness of proof is required in all matters which constitute the essence of the offense of perjury. . . . In a prosecution for perjury it is essential to correctly describe the judicial proceedings in which the perjury is alleged to have been committed, and it must be proved substantially as laid."

Directing our attention to the testimony upon which the judgment in this cause is predicated, it is sufficient to say that we have carefully read in detail the disclosures of the record as to the proof offered, and in our opinion there is an entire absence of any testimony which shows that the false swearing as charged in this case had any connection with the case of State v. Boyd. It is conceded by the State that the statements of the defendant as taken under oath by the deputy clerk, Mr. Moone, were not taken in any particular case, and the deputy clerk testifies that the defendant executed six different bonds on the same date that the bond in the case of State v. Boyd was executed. There is an entire absence of any showing as to which one of the bonds the statement of the defendant was to be applied, in fact under the law they did not have reference to any of them. The law does not recognize any such method of qualifying sureties upon a bail bond. They should be sworn in that particular case and the questions propounded to them as to their solvency, but if the statements are reduced to writing and sworn to by affidavit, then the affidavit should show the particular case in which such statements were made. There is no such showing as that made in the case at bar. If the record in this cause discloses the common and uniform practice of qualifying sureties upon bail bonds in the Court of Criminal Correction, then we have no hesitation in saying that the practice

manifestly is a very careless one and finds no recognition by the laws of this State upon that subject.

It may be that the defendant in this cause, if he had been called upon in the particular case to swear to the statements that are charged in the indictment, would have done so, yet that by no means would justify a conviction for perjury committed in a certain judicial proceding, in the entire absence of any testimony showing that the false statements were made in connection with such proceeding. The testimony as disclosed by the record in this cause could just as well be applied to any of the other cases in which the defendant executed bonds on the date that the bond was executed in the case of State v. Boyd. In fact, the deputy clerk, Mr. Moone, testifies that he is unable to say as to which of the bonds were executed first, or as to which of them the statements as made by the defendant were made. We again repeat that it was absolutely essential to make proof that the false statements as charged by indictment were made in the judicial proceeding of State v. Boyd. The rules of law as heretofore pointed out are firmly established in our jurisprudence that in order to warrant the conviction of any person charged with a criminal offense, there must be substantial proof of the essential elements of the crime with which the party is charged. These are matters in the trial of causes that cannot be left to mere surmises or guesses, and if we are longer to regard the well-recognized rules of law as applicable to the proposition involved in this cause, there is no escape from the conclusion that the judgment in this cause should be reversed, and for the error as herein indicated—the failure of the court to give the instruction requested by the defendant at the close of the State's case—the judgment in this cause should be reversed and the defendant discharged. It is so ordered. All concur.